U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

JUL 18 2007

ROBERT H. SHEMWELL, CLERK
BY _____
         DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL. PAUL G. MATHEWS | CIVIL ACTION NO. 99-604 |
| versus | JUDGE TRIMBLE |
| HEALTHSOUTH CORPORATION | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court are Relator's Motion for Partial Summary Judgment (Doc. # 182) and defendant's Cross-Motion for Summary Judgment (Doc. # 190)[1]. The parties have filed all opposition, response and reply briefs and these arguments have been considered by the court. For the reasons discussed herein, we find that relator's motion should be DENIED and that defendant's motion should be GRANTED.

I. **Background**

A. Relevant Facts

Sunrise Rehabilitation Hospital ("Sunrise") has been owned by defendant HealthSouth Corporation ("HealthSouth") since January 1, 1994[2]. Barbara Hayes became the interim administrator at Sunrise early in 1994 and held this position until November of 1995, when she

---

[1] HealthSouth's Cross-Motion for Summary Judgment also serves as its memorandum in opposition to Relator's Motion for Summary Judgment.

[2] Doc. # 191 - 2 ("HealthSouth's Statement of Disputed Facts") at ¶ 1.

was replaced by Kevin Conn[3].

Sunrise is classified as an inpatient rehabilitation facility ("IRF") and participates in federally funded health care programs such as Medicare and Medicaid[4]. Since 1983, the Social Security Act has provided for reimbursement to participating acute care general hospitals under the prospective payment system ("PPS"), which reimburses these providers a specific set fee for each patient discharge[5]. IRFs like Sunrise are granted exempt status as to the PPS, and are reimbursed on a cost basis, when they meet certain criteria[6]. One such criterion is the 75 Percent Rule, which mandates that each IRF must show that

> "during its most recent 12-month cost reporting period, it served an inpatient population of whom at least 75 percent required intensive rehabilitative services for the treatment of one or more of the following conditions:
>
> (i)     Stroke.
>
> (ii)    Spinal cord injury.
>
> (iii)   Congenital deformity.
>
> (iv)   Amputation.
>
> (v)    Major multiple trauma.

---

[3]June 29, 2005 Deposition of Kevin Conn at p. 10, line 2, attached as Exhibit 5 to Affidavit of Jan K. Frankowski.

[4]Doc. # 182 - 3 ("Relator's Statement of Undisputed Facts") at ¶ 2.

[5]Doc. # 189 - 3 ("HealthSouth's Statement of Undisputed Facts") at ¶ 1.

[6]Id.

  (vi)  Fracture of femur (hip fracture).

  (vii)  Brain injury.

  (viii)  Polyarthritis, including rheumatoid arthritis.

  (ix)  Neurological disorders, including multiple sclerosis, motor neuron diseases, polyneuropathy, muscular dystrophy, and Parkinson's disease.

  (x)  Burns.[7]"

Shortly after Kevin Conn arrived at his post as the new administrator of Sunrise in 1996, he reviewed trending reports[8] which showed that, for the first few months of 1996, the facility was not in compliance with the 75 Percent Rule[9]. This discovery prompted Conn to request trending reports from 1995[10]. These reports also showed noncompliance[11].

Conn reported this shortfall to his supervisor, Vincent Nico, which resulted in the arrival of Robyn Korn ("Korn") for the purpose of studying the coding and patient assignments taking place at Sunrise[12]. Korn worked with another Sunrise employee, Anamarie Rayburn ("Rayburn"), to "reassign patients" to diagnoses within the 75 Percent Rule[13]. Kevin Conn

---

[7] 42 C.F.R. 412.23(b)(2). All references to statutes, regulations or administrative materials shall be construed as those in effect at the time of the alleged violations (1995) unless otherwise specified.

[8] Trending reports are an internal monitoring tool used to track compliance with the 75 Percent Rule. April 27, 2005 Deposition of Kevin Conn at p. 73, lines 9 - 16.

[9] Id at p. 72, lines 15 - 20.

[10] Id at p. 72, line 23 - p. 73, line 1.

[11] Id.

[12] June 29, 2005 Deposition of Kevin Conn at p. 27, lines 8 - 23.

[13] Id at p. 31, lines 14 - 18.

testified that the report he received at the conclusion of this study showed that Sunrise had, in fact, been compliant with the 75 Percent Rule during 1995[14].

Relator, Paul G. Mathews ("Relator") is a former HealthSouth employee who succeeded Conn as Chief Executive Officer of Central Louisiana Rehabilitation Hospital, which was eventually purchased by HealthSouth[15]. Relator alleges that he was informed by Conn, in early 1996, that Sunrise was not in compliance with the 75 Percent Rule[16]. Relator further alleges that his employment with HealthSouth was terminated due to his refusal to acquiesce to certain requests which were made of him during the course of employment[17].

Relator filed the instant suit in 1999, alleging violations of 31 U.S.C. § 3729, et seq., the False Claims Act ("FCA"), by defendant HealthSouth. Specifically, Relator alleges that HealthSouth violated 31 U.S.C. § 3729(a)(1) when it submitted certain documentation which certified its compliance with the 75 Percent Rule, among other applicable regulations, as part of the process of maintaining its PPS exempt status. Further, relator alleges that these false claims were perpetrated by the creation of false records, a violation of 31 U.S.C. § 3729(a)(2).

This court, speaking through Judge F.A. Little, Jr., has twice dismissed relator's claims. On appeal from the second such dismissal, the United States Court of Appeals for the Fifth Circuit held that Relator adequately stated a claim for relief under the FCA and, accordingly,

---

[14] Id at p. 31, lines 2 - 4.

[15] Doc. # 57 ("Relator's Third Supplemental and Amending Complaint") at ¶ 6.

[16] Id at ¶ 17.

[17] Id at ¶¶ 47 - 57. Relator's complaint includes a claim for wrongful termination. This issue is not addressed in either motion now before the court.

preserved all properly briefed issues[18] for further proceedings. Relator filed its Third Supplemental Amended and Restated Complaint on November 6, 2000. HealthSouth renewed its earlier Motion to Dismiss[19] on the basis of failure to plead fraud with particularity. This motion was denied[20].

Relator filed a Motion to Compel Discovery on April 22, 2005, seeking records which it believed to be within the custody of HealthSouth. This court, speaking again through Judge Little, granted relator's motion to compel discovery as to "documents covering the years 1994 and 1995," but denied relator's motion as to records from 1996 to 2000[21]. This case was reassigned to the undersigned shortly thereafter[22].

Relator's instant motion seeks partial summary judgment on the basis that it has submitted evidence which demonstrates that HealthSouth presented false claims for Medicare and Medicaid reimbursement and that such claims were presented with the scienter required by § 3729(b) of the FCA.

HealthSouth filed a Cross-Motion for Summary Judgment in which it seeks summary

---

[18]The United States Court of Appeals for the Fifth Circuit, citing Cinel v. Connick, 15 F.3d 1338, 1345 (5th Cir. 1994), held that since relator failed to include the issue of compliance with the "three hour rule," this issue had been abandoned and was dismissed according to the judgment of the trial court. We follow this decision by the appellate court and, therefore, will not reach this issue, as it has been abandoned and dismissed.

[19]Doc. # 89 (filed 8/14/03).

[20]Doc. # 98 ("Judgment" issued 2/26/04).

[21]Doc. # 170 ("Order Granting in Part and Denying in Part Relator's Motion to Compel" issued 10/21/05).

[22]Doc. # 173 ("Order Reassigning Case" issued on 5/4/06).

judgment on the basis that the evidence presented does not establish a violation of the FCA because, among other defenses, the payments received by it were not conditioned on compliance with the 75 Percent Rule.

### B. Summary Judgment Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, indicate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(C); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 - 50 (1986); Am. Home Assurance Co. v. United Space Alliance, 378 F.3d 482, 486 (5th Cir. 2004). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson at 248. In making this determination, a court must draw all justifiable inferences in favor of the non-moving party. Id at 255. Once the moving party has shown "that there is an absence of evidence to support the non-moving party's case," the non-moving party must come forward with specific facts showing a genuine factual issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); FED. R. CIV. P. 56(C). "Conclusory denials, improbable references, and legalistic argumentation" are not an adequate substitute for specific facts showing that there is a genuine issue for trial. SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993). The movant "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the non-movant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (quoting Celotex, 477 U.S. at 323). If the movant fails to meet this initial burden, the

motion must be denied, regardless of the non-movant's response. Id.

The mere fact that both parties argue that there are no genuine issues of material fact does not automatically mean that a trial is unnecessary or that no factual issues exist. John v. Louisiana, 757 F.2d 698, 705 (5th Cir. 1985). Cross-motions must be considered separately because each movant bears the burden of establishing that no genuine issue as to a material fact exists and that it is entitled to judgment as a matter of law. Shaw Constructors v. ICF Kaiser Engineers, Inc., 395 F.3d 533, 539 (5th Cir. 2004). If there is no genuine issue and one of the parties is entitled to prevail as a matter of law, this court may render summary judgment. Id.

### (xi) Analysis of Law and Arguments

#### A. Elements of the FCA violation alleged

Relator alleges that HealthSouth engaged in the creation of false records for the purpose of presenting false claims to the United States government. In order to establish, as a matter of law, that HealthSouth presented false claims for payment in violation of § 3729(a)(1) of the FCA, relator must demonstrate proof that: (1) the defendant presented a claim to the federal government; (2) the claim presented was false or fraudulent; and (3) the defendant acted with the requisite scienter in the presentment of the false or fraudulent claim. United States v. Southland Managment Corporation, 288 F.3d 665 (5th Cir. 2002) (internal citations omitted). In addition, to establish a violation under § 3729(a)(2), relator must show that: (1) defendant made a record or statement in order to effectuate payment by the government; (2) such record or statement was false or fraudulent; and (3) the defendant made such record or statement with the requisite scienter. Id.

### B. Has relator demonstrated proof of the required elements?

*Presentment of a "claim"*

The first element of an FCA violation is the presentment of a claim to the government. Specifically, 31 U.S.C. § 3729(a)(1) provides for the imposition of liability on "any person who knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval..." Section 3729(c) of the FCA defines a "claim" as "...any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded , or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded."

Relator alleges that the false claims in this matter consist of self-attestation forms and cost reports filed by HealthSouth. The pleadings before us reveal a disagreement between the parties as to whether or not HealthSouth submitted a self-attestation for 1995. We find no need to clarify the existence or non-existence of this document, as discussed below.

The cost reports submitted by HealthSouth, the existence of which produces no disagreement, are certainly "claims" within the meaning of the FCA. While these reports do not make an initial demand for government funds, they affirm the propriety of payments made during the previous year. Simply put, they certify that the provider should be allowed to "keep" the government funds already disbursed. <u>In re Cardiac Devices Qui Tam Litigation</u>, 221 F.R.D. 318 (D.Conn. 2004), <u>citing</u> <u>Gublo v. Novacare, Inc.</u>, 62 F.Supp.2d 347, 355 (D. Mass. 1999) <u>and</u>

<u>United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.</u>, 20 F.Supp.2d 1017 (S.D. Tex. 1998). Relator's complaint clearly bases its allegations on both the attestations <u>and</u> cost reports[23]. Given the jurisprudence cited above, we find that relator has amply demonstrated the presentment of a claim for purposes of the FCA. The existence of the self-attestations and the content of such documents is, therefore, unnecessary to the establishment of a proper claim in this case.

*Were HealthSouth's cost reports "false or fraudulent?"*

Relator must next establish that the claim presented was "false or fraudulent" as required by the FCA. Relator asserts that the cost reports submitted were false, in that they contained certifications that the preparer of the report was "familiar with the laws and regulations regarding the provision of health care services, and that the services identified in this cost report were provided in compliance with such laws and regulations[24]." Relator's case, therefore, alleges FCA liability based on false certification theory, focusing on the truth or falsity of the certification of compliance with certain applicable regulations, rather than the truth or falsity of the information provided in the cost reports themselves.

Relator relies on the testimony of Barbara Hayes to the effect that she was not aware of

---

[23] "The violations of the Act involve claims for reimbursement that HealthSouth Corporation...made in its annual Medicare and Medicaid cost reports and annual self-attestations for HealthSouth Sunrise Rehabilitation Hospital which enabled HealthSouth to be reimbursed for its services...as a prospective payment system...exempt hospital or unit, rather than on a PPS basis." Relator's Third Supplemental Amended and Restated Complaint [Doc. # 57] at ¶ 1, attached as "Exhibit 1" to the affidavit of Jan K. Frankowski in support of relator's motion for summary judgment [Doc. # 183].

[24] <u>See</u> for example Medicare Cost Report attached to the Frankowski Affidavit as Exhibit 29 at Bates No. HSOUTH-000339.

the 75 Percent Rule or what certifications it might require during her tenure at Sunrise[25] as proof that any certifications filed must have been false.

We reject this as proof of claim falsity. It is undisputed that the study performed by Korn and Rayburn in 1996 showed that Sunrise was in compliance with the 75 Percent Rule during 1995. Relator characterizes this study as an exercise in "cooking the books[26]," but provides no proof that this is the case.

The 75 Percent Rule necessarily involves the coding of patient records and the interpretation of the diagnoses within that rule. We find that, by relator's own admission, the process of coding medical records contains a subjective element[27]. Relator also admits that the auditing of patient classifications as it relates to the 75 Percent Rule is not illegal or improper as long as the result is in keeping with the true diagnoses as reflected in patient medical records[28]. In short, relator has produced no evidence which demonstrates that the original assignment of patients to diagnoses both included and excluded from the 75 Percent Rule were correct. Accordingly, we cannot infer that the reassignments made as a result of the study conducted by Korn and Rayburn in 1996 were incorrect.

Relator has not demonstrated that the trending reports reflected accurate coding and patient assignments which resulted in a truly noncompliant IRF during 1995. The certification

---

[25] October 24, 2005 deposition of Barbara Hayes at p. 26, lines 13 - 23.

[26] Doc.# 183 ("Relator's Memorandum in Support of motion for Partial Summary Judgment") at p. 21.

[27] February 24, 2005 deposition of relator, Paul G. Mathews at p. 408, lines 13 - 23.

[28] Id at lines 2 - 17.

implicit in the cost report submitted for 1995 cannot, therefore, be proven false. As such, relator fails to satisfy the element of claim falsity and is not entitled to summary judgment on this motion.

Although we need not continue in our analysis of the elements as they pertain to relator's motion, we will do so for the benefit of our assessment of HealthSouth's cross-motion, which necessarily concerns the same issues of proof.

The United States Court of Appeals for the Fifth Circuit held that when the payment of a government claim is conditioned on certification of compliance with regulations as a part of a contract existing between the government and the contractor, the contractor submits a false claim as a matter of law when it falsely certifies compliance with any such regulation[29]. This ruling demonstrates the connection between false certification and the requirement of materiality. There can be no liability under the FCA when the false claim is not material to the payment sought from the government.

*Is compliance with the 75 Percent Rule material to PPS exempt payment status?*

Compliance with a particular regulation is material when the compliance has "a natural tendency to influence" or is "capable of influencing the decision" by the government to make or to verify payment[30].

---

[29] United States v. Southland Management Corp., 288 F.3d 665, 679 (5th Cir. 2002) reh'g granted, aff'd on reh'g, 326 F.3d 669 (5th Cir. 2003).

[30] Kungys v. United States, 485 U.S. 759, 770, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988); United States v. Southland Management Corp., 288 F.3d 665, 676 (5th Cir. 2002).

Looking to the regulations and manuals[31] before us, we find that the certification of regulatory compliance executed as a part of each attestation and cost report filed by HealthSouth was not material to the PPS exempt payment status at issue in this case. We base our decision on several factors. First, the certifications and/or attestations which form the basis of relator's allegations are not a condition upon which the determination of PPS exempt status was made. Looking to the Medicare Intermediary Manual ("MIM"), we find that the determination of PPS exempt status is made on the basis of information transmitted from the fiscal intermediary ("FI") who is charged with the responsibility of auditing exempt status providers in order to verify compliance with the 75 Percent Rule[32]. The FI was required to forward all information on compliance or noncompliance to the Medicare Regional Office ("RO") which would use this information to make a determination as to whether or not a provider is properly exempted from the PPS[33]. The MIM does not instruct the FI to simply rubber stamp the attestations or certifications it receives from providers. Rather, FI has a duty to audit compliance. The RO assesses information received and issues a determination.

We also find the Government Accounting Office report issued in April of 2005[34] to be

---

[31]All references to regulations or Medicaid/Medicare manuals are to those versions in effect in 1995, when the alleged false statements were made.

[32]MIM at § 2260, attached as Exhibit 33 to Defendant's Memorandum in Opposition to Relator's Motion for Partial Summary Judgment/Memorandum in Support of its Cross-Motion for Summary Judgment [Doc. # 190].

[33]Id.

[34]Government Accounting Office Report to the Senate Committee on Finance and the House Committee on Ways and Means ("Medicare, More Specific Criteria Needed to Classify Inpatient Rehabilitation Facilities"), issued April 2005 and attached as Exhibit 24 to Doc. # 190.

relevant to the issue of materiality. This report discloses that few inpatient rehabilitation facilities ("IRF"s) were "declassified" based on noncompliance with the 75 Percent Rule during the five years preceding the issuance of the report[35]. This was apparently due to a lack of auditing and compliance verification by FIs, which the FIs attributed to a lack of clear instruction from the Centers for Medicare & Medicaid Services ("CMS") as to what procedures FIs should use to conduct verification audits on IRFs like Sunrise.

We find, therefore, that relator has failed to establish that the alleged false claim had any impact on Sunrise's PPS exempt status. There is simply no evidence, as noted by the GAO study, that noncompliance with the 75 Percent Rule would have necessarily resulted in payment under the PPS. Although there can be no doubt that IRFs were, in a technical sense, required to submit attestations and cost reports which contained regulatory compliance certifications, we find that these technical requirements were not "substantively material" because it is clear that their presence or absence had no effect on Sunrise's payment status. United States of America v. Intervest Corp., 67 F.Supp.2d 637, 648 (S.D. Miss. 1999).

Our assessment of the summary judgment evidence before us leads us to the conclusion that defendant HealthSouth is entitled to summary judgment as to its liability under the FCA. Relator has failed to rebut the evidence offered by HealthSouth which demonstrates that the alleged false claims were material to the PPS exempt status which Sunrise held. As we have already discussed, materiality is an essential element of an FCA suit. Materiality, although a mixed question of law and fact, is to be determined by the court. Id at 647, citing United States ex rel. Berge v. Board of Trustees of the University of Alabama, 104 F.3d 1453, 1460 (4th Cir.

---

[35]Id at p. 18.

1997), cert. denied, 522 U.S. 916, 118 S.Ct. 301, 139 L.Ed.2d 232 (1997). Finding as we have with respect to materiality, we must grant summary judgment in favor of defendant.

*Residual state law claims*

It appears from the record in this case that relator's state law whistleblower claim survived all previous dismissals and, therefore, remains for determination. Finding as we have with respect to relator's FCA suit, we decline to retain jurisdiction over any properly plead state law claims. 28 U.S.C. § 1367(c)(3). All such claims may be pursued in the proper state court.

## III. CONCLUSION

After careful consideration, we find that relator simply has not provided the necessary proof which entitles him to summary judgment on the elements of FCA liability. Specifically, the court finds that relator has not satisfied the essential elements of claim falsity and materiality in this case and, therefore, is not entitled to partial summary judgment. Accordingly, we reject all allegations of violations in successive years (1996 - 2000) as these allegations necessarily require an initial false claim in 1995.

Conversely, the court finds that relator has failed to rebut the presumption against materiality created by the summary judgment evidence on this issue argued by HealthSouth. Specifically, we find that the alleged false claims were substantively immaterial to the PPS exempt payments received by Sunrise. HealthSouth is, therefore, entitled to summary judgment on its cross-motion.

Alexandria, Louisiana

July 18, 2007

                                                                      JAMES T. TRIMBLE, JR.
                                                    UNITED STATES DISTRICT JUDGE